# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAY HOON SHIN, ET AL.,** | CASE NO. 18-cv-02143-YGR |
| Plaintiffs, | |
| vs. | **ORDER GRANTING MOTIONS TO DISMISS** |
| | Re: Dkt. Nos. 22, 39 |
| **WASHINGTON MUTUAL BANK, F.A., ET AL.,** | |
| Defendants. | |

Now before the Court are two motions to dismiss plaintiffs Jay Hoon Shin's and Hyesook Shin's complaint (*see* Plaintiffs' Verified Complaint for Damages, Declaratory Relief, and Injunctive Relief ("Compl."), Dkt. No. 1-1 at ECF pp. 2–36) pursuant to Federal Rule of Civil Procedure 12(b)(6), namely one filed by defendant JPMorgan Chase Bank, N.A. ("Chase") (Dkt. No. 22 ("CMTD")) and the other filed by intervenor-defendant U.S. Bank National Association, as trustee, successor in interest to Bank of America, National Association, as trustee as successor by merger to LaSalle Bank National Association, as trustee for WAMU Mortgage pass-through certificates, series WAMU 2005-AR3 ("U.S. Bank") (Dkt. No. 39 ("UMTD")).

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS** both motions to dismiss.[1]

---

[1] In connection with their motions to dismiss, Chase and U.S. Bank each request that the Court take judicial notice of documents which are either: (i) publicly recorded in Alameda County; (ii) available on government websites; (iii) on file with the Superior Court of the State of California, County of Alameda (the "Superior Court"); or (iv) on file with the United States District Court, Northern District of California. (Chase's Request for Judicial Notice ISO MTD ("CRJN"), Dkt. No. 23; U.S. Bank's Request for Judicial Notice ISO MTD ("URJN"), Dkt. No. Dkt. No. 39-1.) These documents are all available publicly. Accordingly, the Court **GRANTS** Chase's and U.S. Bank's unopposed requests to take judicial notice of these public records and will take proper evidentiary view of the materials. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001) (noting "a court may take judicial notice of matters of public record" and documents whose "authenticity . . . is not contested" and upon which a plaintiff's complaint relies) (internal quotation marks omitted) (alterations in original); *see also* Fed. R. Evid. 201(b)(2).

# I. RELEVANT BACKGROUND

## A. Factual Background

The following facts are based on the allegations of plaintiffs' complaint and judicially noticeable documents:

On or around January 14, 2005, plaintiffs obtained a $648,000.00 mortgage loan (the "Loan") from defendant Washington Mutual Bank, F.A. ("WaMu").  (Compl. ¶ 8; *id.* Exh. 1 ("DOT"), Dkt. No. 1-1 at ECF pp. 39–55.)  The promissory note ("Note") was secured by a Deed of Trust against the real property located at 18980 Mount Lassen Drive, Castro Valley, California 94552 (the "Subject Property").  (Compl. ¶ 18; DOT at 3.)  California Reconveyance Company ("CRC") was named as the Trustee on the Deed of Trust.  (DOT at 1.)  The Deed of Trust authorized WaMu to sell plaintiffs' loan without prior notice, and it granted the transferee the power to enforce the associated Note and Deed of Trust.  (DOT at 13–14 ¶ 20.)

In 2005, WaMu sold plaintiffs' loan to a securitized trust, the WaMu Mortgage Pass-Through Certificates Series 2005-AR3 (the "Securitized Trust").  (*See* CRJN Exh. A ("PSA").)[2] Under the Securitized Trust's Pooling and Servicing Agreement, indicating a cut-off date of February 1, 2005, WaMu retained the right to service plaintiffs' loan, including the right to initiate foreclosure in the event of default, for the Securitized Trust's benefit.  (*Id.* Art. III §§ 3.01, 3.09.) The Pooling and Servicing Agreement also designated LaSalle Bank, N.A. ("LaSalle") as the original Trustee.  (*Id.* § 2.01.)

On September 25, 2008, WaMu was placed into receivership with the Federal Deposit Insurance Corporation ("FDIC"), which immediately entered into a Purchase and Assumption Agreement selling many of WaMu's assets to Chase.  (CRJN Exh. C ("PAA").)  The Purchase and Assumption Agreement explained Chase "specifically purchases all mortgage servicing rights and obligations" of WaMu, including the servicing rights to plaintiffs' loan.  Under the Pooling and

---

[2]  Because of the overlap in Chase's and U.S. Bank's requests for judicial notice, and for the sake of brevity, the Court cites primarily to the documents appended to Chase's request.  To the extent a cited document is not the subject of Chase's request, the Court provides the appropriate citation to the docket.

1   Service Agreement, Chase had the right to initiate foreclosure on defaulted loans.  (PSA § 3.09.)

2   On July 15, 2009, CRC recorded a Notice of Default with the Alameda County Recorder's

3   Office, notifying plaintiffs that they owed $10,079.34.  (CRJN Exh. D.)  On February 9, 2011,

4   Chase recorded an Assignment of Deed of Trust transferring "all beneficial interest" under the

5   Deed of Trust to Bank of America, N.A. ("BANA"), as successor by merger to LaSalle, as Trustee

6   for the Securitized Trust.  (CRJN Exh. E.)  On July 13, 2011, CRC recorded a Notice of Trustee's

7   Sale setting a foreclosure sale for August 5, 2011.  (CRJN Exh. F.)

8   According to Chase, approximately two years after it transferred servicing of plaintiffs'

9   loan to Select Portfolio Servicing, Inc. ("SPS"), foreclosure trustee Quality Loan Servicing Corp.

10  ("QLS") recorded a renewed Notice of Default on June 14, 2016.  (CRJN Exh. G ("NOD-2").)

11  The notice indicated that U.S. Bank had become the Trustee under the Securitized Trust and that

12  plaintiffs owed $358,009.28.  (*Id*. at ECF pp. 2–3.)  On October 4, 2017, QLS recorded a renewed

13  Notice of Trustee's Sale setting a foreclosure sale for October 30, 2017 and indicating plaintiffs

14  owed $908,643.18.  (CRJN Exh. H.)  Plaintiffs have failed to indicate that they have satisfied their

15  obligations under the Deed of Trust.

16  **B.      Procedural Background**

17  Plaintiffs, proceeding *pro se*, filed the instant action against Chase, WaMu, and Doe

18  defendants 1–10 in the Superior Court on February 21, 2018.  Thereafter, on April 10, 2018,

19  Chase removed the action to this Court based upon diversity of citizenship.  (Dkt. No. 1.)

20  Although difficult to comprehend, the "clear thrust" of the complaint, as described by plaintiffs, is

21  as follows:

22      "Defendants" have at no point mentioned herein, [been] authorized by the State of
        California's Department of Corporations to engage in acts constituting that of a
23      Residential Lender . . . .  [N]one of the named defendants to this action are [*sic*] a
        beneficiary or a real party in interest under [p]laintiffs' Deed of Trust having the
24      power to enforce the underlying mortgage Note against the mortgage property
        and/or to collect monthly mortgage payments, and [p]laintiff Shin further contends
25      that the mortgage loan has become unsecured, and consequently, no real party in
        interest exists with the power to collect [p]laintiffs' mortgage payments or to
26      exercise the power of sale under the Deed of Trust, and/or enforce payment from
        [p]laintiff[s] upon the Promissory Note.
27

28  (Compl. ¶ 9 (emphasis omitted).)  In other words, the "botched mortgage . . . precludes any

3

1  individual and/or entity from holding any beneficial interest in the deed of trust and/or ownership

2  title of the promissory note" such that they can enforce that interest. (*Id.* ¶ 10.) This conclusion

3  appears to stem from allegations that WaMu was not "authorized . . . to engage in acts constituting

4  that of a Residential Lender" and that the Loan was thus invalid. (*Id.* ¶ 9; *see also id.* ¶ 15.)

5      On the basis of these allegations, plaintiffs assert eight causes of action against WaMu,

6  Chase, and the Doe defendants[3]: (1) quiet title, (2) breach of fiduciary duty, (3) fraud, (4) violation

7  of the California Residential Mortgage Lending Act ("CRMLA"), Cal. Fin. Code § 50505; (5)

8  violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (6)

9  unjust enrichment; (7) accounting; and (8) cancellation of the Deed of Trust and Note. Plaintiffs

10  seek "[c]ompensatory, [s]pecial[,] and [g]eneral damages in an amount . . . not less than

11  $1,000,000.00 . . . ." (*Id.* at ECF p. 34 ¶ 5.)

12      U.S. Bank moved to intervene in this action on April 30, 2018, arguing that "the

13  [Securitized] Trust's interest will not be adequately represented in this action because [Chase]

14  does not currently possess any interest under the DOT." (Dkt. No. 20 at 5.) In part because it

15  found that "practical considerations dictate that, as the beneficiary to the property interest in this

16  action, U.S. Bank has a need to be represented in a way that Chase cannot adequately provide,"

17  this Court granted U.S. Bank's motion. (Dkt. No. 38 at 6.)

18      Chase filed its instant motion to dismiss on May 1, 2018, with plaintiffs' response due by

19  May 15, 2018. Plaintiffs did not respond, and the Court subsequently ordered them to file an

20  opposition to the motion, or a statement of non-opposition, by no later than May 31, 2018. (Dkt.

21  No. 32.) Instead of filing an opposition to the motion, plaintiffs re-filed the identical motion to

22  remand they had previously filed on April 20, 2018. (Dkt. No. 33.)[4]

23      U.S. Bank filed its instant motion to dismiss on July 26, 2018. To date, plaintiffs have not

24

25      [3] Plaintiffs allege, on information and belief, that "each of the Doe [d]efendants is
26  contractually, strictly, negligently, intentionally, vicariously liable and[/]or otherwise legally
    responsible in some manner for the acts and omissions described" in the complaint. (*Id.* ¶ 5.)

27      [4] In conjunction with its order granting U.S. Bank's motion to intervene, this Court denied
28  plaintiffs' motion to remand this suit to state court. (Dkt. No. 38.)

responded to the motion, despite previously being put on notice of this Court's Civil Local Rule requiring them to do so.  (*See* Dkt. No. 32.)

### C.    Plaintiffs' Prior Lawsuits

This is at least the fifth lawsuit plaintiffs have brought in connection with foreclosure of the Subject Property.  With the exception of this action, plaintiffs' modus operandi has been to voluntarily dismiss the matter without prejudice in the few weeks or even days leading up to the hearing on a pending demurrer or motion to dismiss.[5]

By way of background, on September 14, 2011, plaintiffs sued CRC and BANA in its capacity as Trustee for the Securitized Trust in the Superior Court.  (*See* CRJN Exh. I.)  Plaintiffs alleged claims for quiet title, violation of the UCL, and injunctive relief.  They voluntarily dismissed that lawsuit on March 8, 2012, the day before the hearing on the defendants' demurrer was set to take place.  (*See* URJN Exh. G at ECF pp. 188–89.)

Then, five days later on March 13, 2012, plaintiffs sued BANA and Chase in federal court in this district.  (*See* URJN Exh. D at ECF pp. 77–84.)  The operative complaint in that case challenged the Notice of Default recorded on July 15, 2009 and the Notice of Trustee's Sale recorded on July 13, 2011, and alleged claims for, *inter alia*, slander of title, negligence, negligent misrepresentation, and violation of the UCL.  (*See id*; *see also* CRJN Exh. J.)  Plaintiffs voluntarily dismissed the federal action, approximately two weeks before the hearing on the defendants' motion to dismiss was set to take place.  (*See* URJN Exh. D at ECF p. 88.)

Subsequently, on December 17, 2014, plaintiff Jay H. Shin sued, *inter alia*, SPS, BANA, and Chase in the Superior Court.  (*See* URJN Exh. E.)  Plaintiff alleged claims for, *inter alia*, violation of the California Homeowner Bill of Rights, violation of the UCL, breach of the covenant of good faith and fair dealing, negligence, and negligent infliction of emotional distress.  (*Id*.)  Plaintiff Jay H. Shin voluntarily dismissed that lawsuit on April 8, 2015, eight days before

---

[5]  The Court notes that given plaintiffs' failure to respond to Chase's motion to dismiss, it vacated the hearing on the motion, originally set for June 12, 2018.  A hearing on U.S. Bank's motion to dismiss was never set pursuant to the Court's July 12, 2018 order.  (*See* Dkt. No. 38 at 7.)

the hearing on Chase's and SPS's demurrers was set to take place. (*See* URJN Exh. H at ECF p. 194–96.)

Prior to the April 8, 2015 voluntary dismissal, plaintiffs had filed yet another action, on January 13, 2015, this time against Chase and U.S. Bank in its capacity as Trustee for the Securitized Trust, also in the Superior Court. (*See* URJN Exh. F.) Similar to the instant case, the claims in that case included, *inter alia*, quiet title, fraud, violation of the CRMLA, violation of the UCL, unjust enrichment, accounting, and cancellation of the Deed of Trust and Note. (*Id*.) Plaintiffs voluntarily dismissed that lawsuit on May 28, 2015, approximately three weeks before the hearing on Chase's demurrer was set to take place, and just one day after U.S. Bank filed its own demurrer. (*See* URJN Exh. I at ECF pp. 201–02.)

## II.   LEGAL FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require the "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether a plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Further, if a court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)

(internal quotation marks omitted). In making this determination, a court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

## III. DISCUSSION

Chase and U.S. Bank raise numerous arguments to support their requests to dismiss plaintiffs' claims. Having analyzed the arguments, the Court is inclined to agree with the majority of the positions raised. Further, plaintiffs' failure to oppose the two motions supports a finding that they concede the merits of defendants' arguments. *See Marziano v. Cty. of Marin*, No. C-10-2740 EMC, 2010 WL 3895528, at *4 (N.D. Cal. Oct. 4, 2010) ("[T]he Court views [plaintiff's] failure to oppose the argument as a concession that the . . . claim should be dismissed."); *Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence."). To the extent the Court finds some of Chase's and U.S. Bank's arguments dispositive of the motions, it declines to address the rest unless otherwise noted.[6] The Court does note that plaintiffs' history of

---

[6] The Court, however, notes that Chase's threshold argument that the action should be dismissed as to it because plaintiffs fail to allege Chase has any ongoing interest in their loan does not persuade. The cases Chase cites in supports of its argument are distinguishable and inapposite. In *Lou v. JP Morgan Chase Bank N.A.*, No. 3:17-cv-04157-WHO, 2018 WL 1070598 (N.D. Cal. Feb. 26, 2018), Chase, the lender, was dismissed because the plaintiff failed to allege that Chase had any interest in his loan or was involved in its servicing *at the time of default*. *Id*. at *1. Here, plaintiffs' complaint does not distinguish between the 2009 and 2016 notices of default, and Chase concedes it "became [p]laintiffs' servicer when it acquired WaMu's servicing rights in 2008" and "remained [p]laintiff's [*sic*] servicer until 2014." (CMTD at 1, 9.) In *Schoenbart v. U.S. Bank N.A.*, No. C 16-00070 WHA, 2016 U.S. Dist. LEXIS 92353 (N.D. Cal. July 15, 2016), all of the plaintiffs' claims were "based solely on WAMU's business model" of securitization and her derivative theory that because "WAMU must have securitized and sold her loan to a third-party investment trust in 2007 (à la 'The Big Short')[,] . . . the FDIC could not have acquired her loan when it put WAMU into receivership . . . . [and] [t]hus, Chase could not have acquired her loan when it assumed WAMU's loan portfolio." (*Id*. at *3.) To the extent these claims can be likened to plaintiffs' claims here arising from the alleged invalidity of plaintiffs' loan because WaMu was purportedly unauthorized to engage in lending practices, the latter claims are addressed herein and dismissed for lack of subject matter jurisdiction. (*See infra* Section III.A.) And, in *Lee v. Quality Loan Service Corp.*, No. 16-cv-02415-YGR, 2016 U.S. Dist. LEXIS 96173 (N.D. Cal. July 22, 2016), this Court dismissed the plaintiff's claims against Chase "because Chase no longer held any interests in the note and the deed of trust in question *at the time of the events allegedly giving rise to plaintiff's causes of action*." *Id*. at *11 (emphasis supplied). Here, however, "the time of the

filing cases provides additional information, appropriately considered through defendants'
requests for judicial notice.

### A.  Whether the Court has Jurisdiction Over Claims Based on WaMu's Conduct

Chase argues that the Court lacks jurisdiction over claims based on WaMu's conduct.
(CMTD at 7–8.)  The Court agrees.

The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA")
empowers the FDIC to "act as receiver or conservator of a failed institution for the protection of
depositors and creditors."  *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir.
2012) (internal quotation marks omitted).  Where a financial institution has failed and the FDIC
has assumed receivership, "no court shall have jurisdiction over . . . (ii) any claim relating to any
act or omission of such institution or the [FDIC] as receiver" unless that claim was first exhausted
before the FDIC.  12 U.S.C. § 1821(d)(13)(D)(ii); *Rundgren v. Wash. Mut. Bank, FA*, 760 F.3d
1056, 1060 (9th Cir. 2014); *Benson*, 673 F.3d at 1211–12.  "A claimant cannot circumvent the
exhaustion requirement by suing the purchasing bank based on the conduct of the failed
institution."  *Rundgren* , 760 F.3d at 1064.

FIRREA's jurisdiction-stripping provision "distinguishes claims on their *factual bases*
rather than on the identity of the defendant."  *Benson*, 673 F.3d at 1212 (emphasis supplied).
Thus, courts are divested of jurisdiction over claims when they are "based on the conduct of a
failed institution" such that claims are "*functionally*, albeit not *formally*, against a failed bank."  *Id*.
at 1214–15 (emphases in original) (internal quotation marks omitted).  A plaintiff is required to
exhaust her claim before the FDIC whenever it is based on conduct of a failed institution, even
where the plaintiff does not name that institution as a defendant.  *Id*. at 1212.  The jurisdictional
bar applies even where the failed bank or some of its assets are transferred to another bank by the

---

events allegedly giving rise to plaintiff[s'] causes of action" is not clear from the complaint, so the
Court declines to dismiss the claims against Chase on the ground that Chase had no "interest[] in
the note and the deed of trust" during the same.  *Id*.

As for U.S. Bank's argument that the Deed of Trust and Assignment of the Deed of Trust
confirm its "standing to enforce the 2005 DOT or the mortgage loan," it ignores plaintiffs' theory
that these documents are invalid.  (UMTD at 5.)

FDIC. *Id.* at 1214–15.

WaMu is a failed institution, and claims based on its conduct before entering receivership are subject to FIRREA's exhaustion requirement. WaMu was placed into receivership with the FDIC, which immediately entered into a Purchase and Assumption Agreement selling many of WaMu's assets to Chase on September 25, 2008. (*See* PAA.) Claims based on WaMu's conduct before the FDIC took control of it and which are "functionally" against WaMu are thus subject to the exhaustion requirement.

Contrary to Chase's assertion that *all* of plaintiffs' claims are based on WaMu's conduct, the Court finds that such claims include only those based solely on the alleged invalidity of plaintiffs' loan given that WaMu was the lender.[7] Namely: (i) quiet title (*see, e.g.*, Compl. ¶ 27 ("[T]o be clear, [p]laintiffs . . . are hereby challenging the validity of the mortgage loan)); (ii) breach of fiduciary duty (*see, e.g., id.* ¶ 30 ("The [d]efendants . . . knew they were violating California law while engaging in residential lending practices while being unlicensed[] and . . . knew that to enter into a thirty (30) year contract[,] i.e., [t]he Deed of Trust [a]nd Promissory Note with a California [r]esident, while never obtaining any type of licensing status would result in [f]inancial [f]raud . . . .")); (iii) fraud (*see, e.g., id.* ¶ 37 ("Defendants unlawfully, and without legal authorization, signed a contract (The Deed of Trust and Promissory Note) at a time when defendants were not legally entitled to do [*sic*], in violation of Federal Law.") (emphasis omitted)); and (iv) cancellation of the Deed of Trust and Note (*see, e.g., id.* ¶ 96 ("Plaintiffs . . . allege and contend that the Deed of Trust, if it is to be relied upon for any reason related to this litigation, is

---

[7] However, the Court agrees with Chase that to the extent plaintiffs allege independent Chase misconduct in connection with Chase's 2011 assignment of the Deed of Trust, (*see* Compl. ¶ 10), such a claim fails. *See In re Marques v. JP Morgan Chase Bank*, No. SA CV 14-615-JFW, 2014 WL 5023226, at *6 (C.D. Cal. Oct. 7, 2014) ("Numerous courts have recognized that, pursuant to the Purchase and Assumption Agreement, . . . the FDIC validly transferred to [Chase] 'all right, title, and interest of the [FDIC] in and to all of the assets' of WAMU.") (quoting PAA ¶ 3.1). These assets included any servicing rights held by WaMu as of September 25, 2008. *See Shkolnikov v. JPMorgan Chase Bank*, No. 12-03996 JCS, 2012 WL 6553988, at *14 (N.D. Cal. Dec. 14, 2012) ("Pursuant to the P & A Agreement, Chase took title to all of WaMu's assets. . . . The P & A Agreement provides that Chase 'specifically purchase[d] all mortgage servicing rights and obligations of [WaMu].' . . . Thus, Chase took WaMu's interest in September 2008, and was entitled to collect payments and initiate foreclosure." *Id.* (quoting PAA ¶ 3.1) (citations omitted).

void for fraud in the execution.")).[8]

Plaintiffs do not allege in their complaint that they have ever presented these claims to the FDIC, nor do they explain why their claims are not susceptible to resolution through the administrative process. The Court therefore lacks subject matter jurisdiction over these claims under FIRREA, namely counts one, two, three, and eight, and they are hereby **DISMISSED WITH PREJUDICE**.[9]

### B. Whether the Complaint States a Claim Based on Independent Conduct

The Court next considers whether plaintiffs' complaint adequately states claims, based on defendants' independent conduct, for (i) violation of the CRMLA, (ii) violation of the UCL, (iii) unjust enrichment, or (iv) accounting.[10]

---

[8] *See Rundgren*, 760 F.3d at 1064–65 (holding that all of plaintiffs' claims "relate[d] to WaMu's acts or omissions for purposes of § 1821(d)(13)(D)" because they "rest[ed] on the theory that WaMu took deceptive and fraudulent actions to induce [plaintiffs] to enter into a loan agreement, and their mortgage and note [were] therefore unenforceable").

[9] To the extent plaintiffs' other claims are based on WaMu's conduct before the FDIC took control of it, they are also **DISMISSED WITH PREJUDICE**. For example, plaintiffs' claim for an accounting appears to be based in part on such conduct. (*See, e.g.*, Compl. ¶ 84 ("Defendant Lender illegally and wrongfully received mortgage payments from [p]laintiff[] Shin.").)

The Court recognizes that dismissal for lack of subject matter jurisdiction is typically without prejudice. *See Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004). However, even if the court did have jurisdiction to hear these claims, they would fail because they are premised on plaintiffs' theory that WaMu was not "licensed" by the State of California to make residential mortgage loans. (*See, e.g.*, Compl. ¶¶ 15, 19, 31, 33, 36, 95.) As both Chase and U.S. Bank note, WaMu was a federally chartered bank at the time the Loan was executed and, as such, was not required to obtain state-level licenses. *See Wells Fargo Bank, N.A. v. Boutris*, 419 F.3d 949, 965 (9th Cir. 2005) ("The California licensing requirements at issue here, for example, do not apply to national banks. . . . That California saw fit to exempt national banks from its mortgage-lending licensing requirements despite their prevalent activity in that area of business may well reflect the state's own conclusion—almost certainly a correct one—that that the chartering of national banks by the federal government is an exclusive function, inconsistent with state licensing requirements . . . .").

[10] The Court disagrees with U.S. Bank's argument that under *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016), plaintiffs' claims fail because plaintiffs lack standing to challenge the Deed of Trust. In *Yvanova*, the California Supreme Court held that "a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment." *Id.* at 923–24 ("[B]ecause in a nonjudicial foreclosure only the original beneficiary of a deed of trust or its assignee or agent may direct the trustee to sell the property, an allegation that the assignment was void, and not merely voidable at the behest of the parties to the assignment, will support an action for wrongful foreclosure."). But as indicated by this holding, *Yvanova* did not consider standing in the pre-foreclosure context, in other words,

*1.    Fourth Cause of Action: Violation of the CRMLA*

Plaintiffs' fourth cause of action alleges a violation of California Financial Code section 50505 premised on a violation of the Real Estate Settlement Procedures Acts ("RESPA"), 12 U.S.C. § 2605(e).[11]  Specifically, plaintiffs allege defendants failed to respond to their qualified written request ("QWR") regarding their mortgage.

RESPA requires responses to QWRs "for information relating to the servicing" of a debtor's loan only from "servicer[s] of a federally related mortgage loan." 12 U.S.C. § 2605(e)(1)(A).  To constitute a QWR, the request must "(1) reasonably identif[y] the borrower's name and account, (2) either state[] the borrower's 'reasons for the belief . . . that the account is in error' or 'provide[] sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seek[] 'information relating to the servicing of the loan.'" *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (quoting 12 U.S.C. § 2605(e)(1)(A)-(B)) (ellipses in original; some brackets omitted).

The complaint alleges that plaintiffs "sent a [QWR] for information concerning the servicing of their mortgage pursuant to section 2605(e) . . . to Defendants . . . ."  (Compl. ¶ 50.) Plaintiffs allegedly "sought information concerning the chain of title to their mortgage in order to determine whether defendants are valid servicers with respect to their loan with the authority to collect mortgage payments from them."  (*Id.*)  Plaintiffs further allege that "Defendants

---

whether borrowers have standing "to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed." *Id.* at 924.  Because a foreclosure sale has not yet taken place here, and separately because plaintiffs' do not state a claim for wrongful foreclosure, U.S. Bank's standing argument based on *Yvanova* is inapposite.  In addition, U.S. Bank misconstrues plaintiffs' challenge to the Deed of Trust as an allegation that the assignment of the Deed of Trust violated the "trust agreement."  (UMTD at 6.)  Were this the case, the assignment would indeed be voidable, as U.S. Bank indicates.  A number of cases have held that assignments which "allegedly breach[] a term or terms of the PSA" are voidable rather than void because the beneficiaries, not the borrower, have the right to ratify the trustee's unauthorized acts."  *Mendoza v. JPMorgan Chase Bank, N.A.*, 6 Cal. App. 5th 802, 812–13 (2016).  In contrast, an assignment by a party that never possessed legal title to the property is void.  Plaintiffs' allegations appear to be of the latter type.  In any event, plaintiffs' claims fail for different reasons, as discussed herein.

[11] Section 50505 provides:  "Any person who violates any provision of any of the following federal acts or regulations violates this division:  (a) the federal Real Estate Settlement Procedures Act . . . .").

11

"completely ignore[d]" their QWR.  (*Id.* ¶ 51.)

As a threshold matter, U.S. Bank argues that because it is not a "servicer" of the Loan, it cannot be liable under the RESPA.  (UMTD at 9.)  The Court agrees.  A "servicer" is defined as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)," and "'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . ."  12 U.S.C. § 2605(i)(2) & (3). Plaintiffs have not pleaded or otherwise established that U.S. Bank is a loan servicer, and the matters judicially noticeable here indicate that U.S. Bank is the Trustee under the Securitized Trust, not a loan servicer.  (*See* NOD-2.)  As U.S. Bank is not a loan servicer, plaintiffs cannot state a RESPA-based section 50505 claim against U.S. Bank and any amendment would be futile. Accordingly, plaintiffs' section 50505 claim is **DISMISSED WITH PREJUDICE** on this basis.

As for Chase, the Court agrees that plaintiffs' section 50505 claim against it is time-barred. Actions for violations of 12 U.S.C. section 2605 must be brought within three years of the alleged violation.  *See* 12 U.S.C. § 2614; *Patague v. Wells Fargo Bank, N.A.*, No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov. 8, 2010) ("The statute of limitations for a RESPA claim is three years for violations of 12 U.S.C. § 2605 and one year for violations of § 2607 or 2608 from the date of the occurrence of the violation.") (internal quotation marks omitted); *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1134 (E.D. Cal. 2010) (finding plaintiff was "time barred under the three-year limitations period of 12 U.S.C. § 2614 [from] seek[ing] damages for 12 U.S.C. § 2605 violations").  And under federal law, a cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004) (internal quotation marks omitted).  Here, plaintiffs do not allege when or to whom they sent any correspondence triggering response duties under the RESPA.  However, because Chase has not been their servicer since July 2014, any correspondence to Chase regarding "information relating to the servicing" of plaintiffs' loan, 12 U.S.C. § 2605(e)(1)(A), must have occurred prior to that time.  Thus, plaintiffs' three-year window for asserting a RESPA-based section 50505 claim has passed.  Accordingly, plaintiffs' section 50505 claim against Chase is **DISMISSED WITH PREJUDICE** on this basis.

### 2. *Fifth Cause of Action: Violation of the UCL*

Plaintiffs' fifth cause of action is for violation of the UCL, which prohibits "unlawful, unfair[,] or fraudulent" business acts or practices. *See* Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

As a threshold matter, Chase argues that plaintiffs' UCL claim against it is time-barred because plaintiffs "fail to allege any Chase misconduct within the past four years." (CMTD at 10.) Chase does not persuade. California courts have adopted two principles that inform the Court's analysis. First, as a general matter, the UCL's four-year statute of limitations will apply to a UCL claim, even when that claim is based on an underlying law with its own separate statute of limitations. *See Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016); *see also* Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."). Second, a UCL claim generally accrues when each of the elements of the cause of action is satisfied. Thus, under the UCL's statute of limitations, the cause of action accrues when the harm is completed. *Beaver*, 816 F.3d at 1178. The relevant inquiry is therefore not when the purported *misconduct* occurred, but when the plaintiffs' suffered the alleged *financial harm*. Because plaintiffs' complaint is unclear in this regard, the Court cannot conclude that the harm to plaintiffs resulting from Chase's alleged misconduct became complete at the time such misconduct occurred. *See id.* ("Although the alleged wrongdoing . . . occurred at or around the date of contract signing, the financial harm—which gives standing to Plaintiffs under the UCL—occurred at a later date.").

In any event, the complaint fails to allege that plaintiffs suffered an injury cognizable under the UCL to establish their standing. California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition." "This provision requires [a plaintiff] to show that she has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–60 (9th Cir. 2009), and also requires a 'causal connection' between [a defendant's] alleged UCL violation and her injury in fact, *Hall v. Time Inc.*, 258 Cal. App 4th 847, 70 Cal.

13

Rptr. 3d 466, 471–72 (2008)." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204–05 (9th Cir. 2010), *cert denied*, 563 U.S. 918 (2011).

Business and Professions Code section 17203 addresses UCL relief and provides in pertinent part:

> Any person who engages, has engaged, or proposed to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

"In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's remedies are 'generally limited to injunctive relief and restitution.'" *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (quoting *Cel-Tech Commc'ns*, 20 Cal. 4th at 179).

Putting aside plaintiffs' boilerplate litany of alleged "deceptive business practices," (Compl. ¶ 65), plaintiffs admit to owing money on the Loan. Indeed, they express a "desir[e] to pay their mortgage." (*Id*. ¶ 15a.) Thus, "the complaint lacks facts of plaintiffs' money or property allegedly lost in that they were obligated to pay their loan and faced foreclosure if they failed to meet their obligations." *Herrejon v. Ocwen Loan Servicing*, 980 F. Supp. 2d 1186, 1205 (E.D. Cal. 2013); *see also Dolan v. Bank of Am., N.A.*, No. 14cv2920-LAB(WVG), 2015 WL 5692385, at *5 (S.D. Cal. Sept. 28, 2015) ("[P]laintiffs' failure to allege that they have satisfied their obligations under the DOT, including their obligations to make all payments . . . precludes their UCL claim.") (citing *Herrejon*).

Since no amendment would cure this defect, plaintiffs' UCL claim is **DISMISSED WITH PREJUDICE**.

### 3. Sixth Cause of Action: Unjust Enrichment

Plaintiffs' sixth cause of action alleges that "[d]efendants . . . falsely represented itself [*sic*] as the Lender/Beneficiary of [p]laintiffs' loan [,] and [d]efendants as some sort of purported servicing agents do not (and did not) have rights to plaintiffs' mortgage payments." (Compl. ¶ 79.) Plaintiffs also allege that "it is unjust for [d]efendants (or whomever acted upon their behalf) and/or Doe [d]efendants to retain the benefit at the expense of [p]laintiff Shin." (*Id*. ¶ 82.) U.S. Bank argues that plaintiffs' unjust enrichment claim fails because it does not constitute an

independent cause of action.  (UMTD at 11.)  The Court agrees.

A standalone cause of action for "unjust enrichment," *when* synonymous with "restitution," does not exist.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Bank of New York Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 955 (2017).  This is because unjust enrichment and restitution simply describe the theory underlying a claim that a defendant has been unjustly conferred a benefit "through mistake, fraud, coercion, or request." *Astiana*, 783 F.3d at 762.  The return of that benefit is the remedy that is typically "sought in a quasi-contract cause of action." *Id.*

Nonetheless, when a plaintiff asserts unjust enrichment, "a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)); *see also Jogani v. Super. Ct.*, 165 Cal. App. 4th 901, 911 (2008).  Importantly, however, a claim for quasi-contract "cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996).  Moreover, the plaintiff must allege "a failure to make restitution under the circumstances where it is equitable to do so." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) (internal quotation marks omitted).

Here, the cause of action for unjust enrichment fails as a matter of law.  Plaintiffs have not alleged any circumstances to justify such a claim.  As Chase notes, plaintiffs do not dispute that they defaulted on the Loan years ago and stopped making payments to any party.  (CMTD at 17.) Thus, regardless of the true owner or servicer of the Loan, plaintiffs would not be entitled to a refund of any payments.  At minimum, they owe the principal and interest.  Moreover, because this action involves an actual, express agreement, namely the Deed of Trust, relief under a quasi-contract theory is unavailable and also was not pled properly in the complaint.  Accordingly, and because there are no additional facts that could render it legally sound, plaintiffs' claim for unjust enrichment is **DISMISSED WITH PREJUDICE**.

### 4.  Seventh Cause of Action: Accounting

Plaintiffs' seventh cause of action is for an accounting, which under California law is

"generally a remedy under equity." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1191 (N.D. Cal. 2009). More specifically, plaintiffs apparently proffer two theories as to this claim: (1) "[t]he amounts which *[p]laintiffs . . . may have owed* remains as uncertain at this time and cannot be determined without an accurate, detailed, and itemized accounting from each Defendant" (Compl. ¶ 88); and (2) "an accounting is necessary to determine *the sums owed to [p]laintiffs . . .* by each of the [d]efendants" based on payments made by plaintiffs to which defendants "are not entitled" (Compl. ¶¶ 92, 93).

"[A]ccounting actions are equitable in nature and appropriate when 'the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.'" *Gomez v. Wachovia Mortg. Corp.*, No. CV-09-02111 SBA, 2010 WL 291817, at *8 (N.D. Cal. Jan. 19, 2010) (quoting *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14 (1977)). "Normally, an accounting is appropriate where a plaintiff seeks to recover an amount that is unliquidated and unascertained, and that cannot be determined without an accounting." *Id.*

Chase argues that plaintiffs' demand for an accounting against it is time-barred because Chase's role as plaintiffs' servicer ended more than three years ago. The Court agrees that plaintiffs' claim is time-barred but disagrees with the rationale. In an action for an accounting, "the nature of the right sued upon, not the form of action or the relief demanded, determines the applicability of the statute of limitations." *Jefferson v. J.E. French Co.*, 54 Cal. 2d 717, 718 (1960) (holding accounting sought was "merely ancillary to the perfection of plaintiff's right under the contract" and thus was governed by two-year statute of limitations for breach of oral contract). Since plaintiffs' claim for an accounting is based on allegations of fraud, it must be filed within three years of "the *discovery, by the aggrieved party*, of the facts constituting [such] fraud." Cal. Civ. Proc. Code § 338(d) (emphasis supplied).[12]

"Code of Civil Procedure section 338, subdivision (d), effectively codifies the delayed discovery rule in connection with actions for fraud[.]" *Platt Elec. Supply, Inc. v. EOFF Elec.,*

---

[12] *See also Upham v. Fox*, No. C 13-3377 MMC, 2014 WL 1379607, at *3–4 (N.D. Cal. Apr. 8, 2014) (applying three-year statute of limitations under Cal. Civ. Proc. Code § 338(d) to accounting claim that "sound[ed] in fraud").

United States District Court
Northern District of California

*Inc.*, 522 F.3d 1049, 1057 (9th Cir. 2008) (internal quotation marks omitted).  The delayed

discovery rule provides that "a cause of action accrues and the statute of limitations begins to run

when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff

pleads and proves that a reasonable investigation at that time would not have revealed a factual

basis for that particular cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803

(2005).  In order to rely on the discovery rule for delayed accrual of a cause of action, a plaintiff

"must specifically plead facts to show: (1) the time and manner of discovery *and* (2) the inability

to have made earlier discovery despite reasonable diligence."  *E-Fab, Inc. v. Accountants, Inc.*

*Servs.*, 153 Cal. App. 4th 1308, 1319 (2007) (internal quotation marks omitted) (emphasis in

original).  Thus, the relevant inquiry is not when Chase stopped servicing the Loan, but how or

when plaintiffs *discovered* the purported fraud.

Plaintiffs' complaint contains no facts to this effect but asserts that plaintiffs' "failure to

discover the true nature of the fraud in regards to 'both' [presumably, WaMu and Chase] and Doe

Defendants being a stranger to the DOT & NOTE was without negligence on the plaintiff's [*sic*]

part . . . ."  (Compl. ¶ 98 (emphases removed).)  Plaintiffs' bare invocation of the discovery rule,

devoid of any facts supporting its application, is insufficient to survive a motion to dismiss.  *See*

*Fox*, 35 Cal. 4th 797 at 806–08.

Normally, plaintiffs would be given leave to amend their complaint to allege facts

supporting the applicability of the delayed discovery rule to their case.  *See, e.g., Perez v. Wells*

*Fargo Bank, N.A.*, No. C-11-02279 JCS, 2011 WL 3809808, at *14, 22 (N.D. Cal. Aug. 29, 2011).

However, the matters judicially noticeable here indicate that plaintiffs learned of the relevant facts

that formed the basis of their accounting claim long ago, at the latest in early 2015.  Indeed,

plaintiffs sued Chase *and* U.S. Bank in the Superior Court in January 2015, asserting many

virtually identical claims arising from their 2005 home loan, including a cause of action for

accounting.  (*See supra* p. 6.)  It is therefore clear that leave to amend to invoke the discovery rule

would be futile:  plaintiffs cannot plausibly allege that they were unable to discover their

accounting claim earlier, given that they both knew of and brought a closely related accounting

claim arising out of the same set of facts in early 2015.  Moreover, and as an additional ground, as

the parties owing money, plaintiffs have "no right to seek an accounting." *Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1170 (E.D. Cal. 2010) (explaining that a borrower, "as the party owing money, not the party owed money, has no right to seek an accounting") (internal quotation marks omitted).

Thus, plaintiffs' three-year window for asserting a fraud-based accounting claim has passed. Accordingly, plaintiffs' claim is **DISMISSED WITH PREJUDICE** as to both Chase and U.S. Bank.

## IV. CONCLUSION

In light of the foregoing fatal deficiencies with plaintiffs' complaint and plaintiffs' failure to oppose Chase's and U.S. Bank's motions, the Court **GRANTS** the motions to dismiss. Each one of plaintiffs' claims is **DISMISSED WITH PREJUDICE**.

This Order terminates Docket Numbers 22 and 39. The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: September 19, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**